IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI


CALVIN BURKE, ON be-
half of himself and others
Similarly Situated
            Plaintiff

                                    Case No _____

    V                               Jury Demand

ST. Louis COUNTY JAIL,
DR SAM PAGE, SCOTT
ANDERS, SGT THOMP-
SON, MAJOR KRAMER,
MAJOR McKNIGHT,
MEDICAL DIR. MS
Allen, UNKNOWN FOOD
SUPERVISOR, UNKNOWN
NURSE(s)
            defendants.


        42 U.SC § 1983


Plaintiff brings this Cause of action
pursuant to 42 U.S.C § 1983 against

State official who committed divers Constitutional violations while acting under color of state law which has harmed plaintiffs past, present and future health without Due Process of law through constant illumination exposure thus depriving Class members of vital sleep, protection from infectious diease mainly Covid 19 amongst other egregious unconstitutional customs and policies.

## JURISDICTION

28 U.S.C / 331

## Litigation

Plaintiff bring this suit under imimnent danger

## PARTIES

1. Calvin Burke all times relevant to this suits was housed at St. Louis COUNTY JAIL

(2)

IN Clayton Missouri against his will in UNCON-
stitutional Conditions. He is an United States
Citizen and plaintiff in this matter

2. Defendant Sam Page all times relevant to
this suit was the county Board President and
the final policy maker over the St. Louis County
Jail.

3. Defendant Scott Anders all time relevant to
this suit was the director of St. Louis County
Jail during which time he made and enforced
Unconstitutional practices and policies.

4 Defendant Major McKnight all times relevant
to this suit used his badge and authority as
Major and grievance liason to deny redress
of grievance, meaningful access to the courts
among other things

5 Defendant Medical director MRS Allen
all times relevant to this suit used her
position to inflict unnecessary pain on plain-
tiff through inadequate medical/dental
treatment

6. Defendant Sgt. Thompson all times relevant

(3)

to this used his authority and badge to violate due process of law.

7. Defendant C/O Smith all times relevant to this suit used his authority and badge to deny plaintiff adequate medical treatment

8. Defendant Jane Doe (Nurse) all times relevant to this suit used her authority to deny plaintiff adequate medical attention.

9. Defendant UNKNOWN food supervisor all times relevant to this suit used her authority to deny plaintiff Nutritional meals

10. All of the defendants are being sued in their official and individual capacity. And because the law was clearly established before he/she acted or failed to act they are not entitled to qualified immunity. They all can be served at 100 S. Central ave, Clayton, MO 63105

## FACTS

11. ON January 2, 2022 plaintiff was booked

(4)

into St. Louis County Jail (hereafter STLCJ).

12. Since being booked into STLCJ plaintiff has been exposed to constant illumination 24 hours a day 7 days a week.

13. The constant illumination has caused plaintiff to be deprived of sleep on an on-going basis

14. Plaintiff has documented his sleep time lasting on average 2½ hours per night.

15. Plaintiff have tried multiple unsuccessful remedies including wrapping a towel over his eyes, meditation and exercise accomplishing nothing.

16. Other detainees similarly situated recommended he sleep on the floor under his bunk except when a certain Sgt. is working because she will write you up for attempt escape or interferring with count procedures.

17. When plaintiff slept on the floor under his bunk to block the light he slept for 7 hours.

(5)

18. There is no legitmate penological justification for requiring plaintiff to suffer physical or pschological harm by living in constant illumination.

19. Each cell has an emergency button which is monitored 24 hours a day by a trained and qualified correctional employee.

20. The light cannot be justified as a safety and security concern when it destroys the health of plaintiff and those similarly situated

21. Plaintiff currently experiencing circadain disruption, sleep disruption and melatonin suppression which are harmful to human health.

22. Some visible signs of plaintiff lack of sleep include but not limited to: depression, anxiety, lack of memory / memory loss, overeating, implusiveness, anger episodes and other behavoir moods

Sleep Deprivation on Central Nervous System

23. Sleep is necessary to keep (Central Nervous

(6)

System hereafter (CNS) function-ing properly

24. Chronic Sleep deprivation Can dis-rupt how your body Sends and process information

25 During Sleep, pathways form between Nerve cells in your brain that help you re-member New information

26 Sleep deprivation leaves your brain exhausted So it Cannot perform its duties properly

27. Sleep deprivation from Constant illumination at SLCJ has Caused plaintiff to develope poor Concentration and Comprehension

28. Too, lack of Sleep has Caused poor and impulsive decesion making in court proceeding in his Current Cases.

(7)

## DIGESTIVE SYSTEM (DS)

29. Plaintiff has become unmotivated to exercise, feeling sluggish from overeating and lack of sleep which if continues he see himself developing chronic illness such as high blood pressure or diabetes all risk factors for African Americans who are roughly 75% of the jail population

30. Sleep effect the levels of two hormones

(8)

leptin and ghrelin, which control feelings
of hunger and fullness.

31. Leptin tells your brain that you have had
enough to eat.

32 When deprived of sleep, the brain reduces
leptin and raises ghrelin, which is an appetite
stimulant.

33. Plaintiff has increased sugar, sodium and
fat intake since being admitted into STLCJ
because his sleep deprivation caused by constant
illumination resulted in him eating all times
of the night and day.

34. Plaintiff has felt to tired to exercise because
of his lack of sleep.

35 Sleep deprivation causes the body to release
less insulin after you eat.

36 Insulin helps to reduce blood sugar levels.

37. Plaintiff being African-American makes him
a prime canidate for diabetes and hypertension
because of the aforementioned Risk factors.

(8)(9)

The Immune System (IS)

38. Sleep deprivation prevents your (IS) from building up its infection fighting substances like antibodies and cytokines.

39. Certain Cytokines also help you to sleep, giving your (IS) more effciency to defend your body against illness.

40. With plaintiff being unvaccinated sleep deprivation places him in a high catagory of being infected with covid 19.

CARDIOVASCULAR SYSTEM (CS)

41. Every major system, tissue, and organ of plaintiff body suffers when sleep becomes deprive

42 When plaintiff sent Health Care a sick call request regarding possible increase in blood pressure from lack of sleep defendant Allen responded with (EX#1  )

43. Defendant Allen know sleep deprivation de-

( 10  10

grades Cardiovascular health in numerous
way especially the sympathetic nervous
system

44. A sleep deprived heart beats faster,
the volumetric rate of blood pumped
through your vasculature increases, and
which triggers high blood pressure

45. Not only that, at the same time
a chronic increase in a stress hormone/
cortisol which is triggered by an overactive
sympathetic nervous system

46. One bad result of sustained deluge of
cortisol is the constriction of blood vessels,
further increasing blood pressure.

47. As stated previously diabetes and weight
gain is associated with sleep deprivation

48. It is enough medical evidence and legal
caselaw to put defendants Page, Anders and
Allen on notice about the harm of sleep
deprivation and constant illumination to
plaintiff and those similarly situated.

(11)

## COVID 19 FAILURES

49. Defendant Page, Anders and Allen have implemented a wholly inadequate covid testing policy with the forseeable results that 'covid 19' would spread throughout the jail

50. Plaintiff and other newly arrived detainees were placed in general population despite defendants promulgated regulations (EX #2) ~~untested~~

51. Plaintiff was placed on 7D Cell #11 without being tested for covid 19.

52. The day before plaintiff was placed in cell #11 one of the two occupants was removed with possible Covid 19.

53. The detainee who plaintiff was housed with never was tested despite possibly been exposed to Covid 19.

54. Plaintiff was not tested for covid 19 until he filed a grievance (EX #3)

(12)

55. Health Care Can best be described as a "hot mess."

## POOR DENTAL TREATMENT

56. IN or about late January 2022 plaintiff developed a dental infection which was treated with antibiotics and tylenol

57. After the antibiotics expired plaintiff infection returned

58. Plaintiff was left in excruciating pain for weeks.

59. ~~Defendants~~ Plaintiff was prescribed tylenol and a mouth wash for about a week despite gum swelling/visible infection

60. That path of treatment described in paragraph 59 was tantamount to Snake oil treatment.

61. The mouthwash relieved pain temporarily.

62 The mouthwash was given to plaintiff in

(13)

the morning and at Night.

63. In the morning plaintiff Would spit the mouthwash into a cup and reuse it to relieve pain until the Next time at Night.

64. This process described in paragraph 63 Was repeated through the Night to relieve pain until the morning.

65. Plaintiff Was given more antibiotics Which halted the infection.

66. The infection returned and plaintiff was given tylenol and mouthwash again, thus repeating the process aforementioned in paragraphs 63-64.

67. Healthcare has Now run out of mouth Wash and left plaintiff in pain Which he is scheduled to see the dentist Within 5-7 months.

POOR NUTRITION

68. Since plaintiff incarceration at SLCT he has been on a Kosher diet

(14)

69. Defendant UNKNOWN food supervisor Knownly Served plaintiff food products with pork ingredients

70. Defendant food supth Knownly serves plaintiff 3 daily meals which fall below the daily Caloric intake

71. Defendant food supv. Violated plaintiff religious right by serving him pork products despite Kosher diet ~~they~~ for religious purpose.

72 Defendants Page and Anders are ultimately responsible for the prootection of plaintiff religious rights and his Nutritional health.

73. Ymost foods served to plaintiff Were Not Kosher Certified or fit for human Consumption.

LIVING CONDITIONS THAT SHOCK THE CONSCENCE

74. UPON arrival at SLCJ housing UNIT 8th fl. plaintiff Was assinged a Cell that Can best be described as inhumane.

75. The cells had trash strewn across the

(15)

floor, the; sink, toilet, and bunk was covered in filth, Not only that, the cells were used to quarantine newly arrived detainees for Covid 19 Screening

76. Quite obviously the cell plaintiff and other detainee were placed in was Neither clean or sterilized against Covid 19 or any thing else for that matter said.

77. The Jail has a custom and policy of housing newly arrived detainees in these filthy conditions as described above.

HEALTH AND SAFETY VIOLATIONS

78. Defendant Page and Anders have created health and safety violations which rise to the level of deliberate indifference by and through overcrowded conditions

79. For example Page and Anders have a custom of turning a single cell into a double occupant cell by requiring a prisoner to sleep on the floor in what is called a "boat."

(16)

80. The "boat" takes up all the walk-
ing or pacing space in the cell and
obstruct the path to both the door and
toilet.

81. It Causes, "the boat" a tripping,
falling and fire hazzard by blocking the
door.

82. Not only that, "the boat", impedes
access to the emergency call button

83. The "boat" is also used as a tool/de-
vice to punish prisoners by assigning
them or moving them on the floor

84. Too, "the boat" is a hotbed of violence
among Cellmates because lack of movement
within the cramp conditions of the Cell.

DO IT YOURSELF DISCIPLINARY PROCE-
DURE

85. ON 2/07/2022 Sgt. Thompso wrote
plaintiff a disciplinary report (EX 4 )

(16)

86. Plaintiff Never received a hearing on the disciplinary report.

87. Plaintiff was denied any and all opportunities to dispute the disciplinary report or appeal the "findings."

88. Defendant Thompson wrote the report, heard the report and decided the punishment with one stroke of the pen and served the report on plaintiff

89. This custom and policy of disciplinary process without a hearing is the edict of Page and Anders

THE BROKEN GRIEVANCE SYSTEM and
   THOSE  WHO  BROKE  IT

90. The grievance process is under the misguidence of two of the most seasoned civil rights violators ever assembled on one floor, particularly the 7th Major Kramer and Major McKnight.

91. Both routinely violate Jail policy of

(18)

that all grievance are to be responded to within 7 days.

92. Plaintiff has filed multiple grievances in which both defendants love to claim either the grievance is still being investigated, misplaced or simply fail to return.

93. Their offices, McKnight/Kramer can best be described as the Roach motel of grievances — grievances go in but grievances—never come out.

94. Defendant McKnight gave defendant Allen of healthcare two grievances which only one was ever returned after plaintiff filed another grievance request the two grievance be processed and return

95. Defendant Kramer conducted this inquiry which resulted in one of the two grievances being returned to plaintiff from Allen.

96 What was not returned by Kramer was the grievance plaintiff filed to have him

(19)

investigate McKnight and Allen Nefarious
Conduct in the first place.

97. The destroyed grievance by McKnight
and Allen Was regarding an Unknown Nurse
kicking plaintiff medication under his cell
door which cause it to spill on the floor.

98. When defendant Kramer returned the
one grievance retrieved from Allen plaintiff
asked where is the grievance that initiated
the investigation, Kramer stated "he re-
turned it to plaintiff already — (impossible)
— and plaintiff must have lost it."

99. Plaintiff filed a grievance on Kramer
regarding this grievance Not being returned
this grievance Was returned With the
investigating officer being Kramer himself.

100. Defendants Page and Anders are re-
sponsible for this tag team of McKnight
and Kramer Custom and policy of deny-
ing redress of grievances to plaintiff
and those similarly situated.

(20)

MEANINGFUL ACCESS TO THE
COURTS

101. Defendants Page and Anders are deny-
ing prisoners access to the Courts by fail-
ing to updated lawbooks, law library or
person(s) trained in the law to aid in detainee
filings.

102. Defendant refuse to mail detainee legal
documents to state or federal Courts
by supplying postage or envelopes

103. Defendant's access to the courts
consist of a typewriter with no typing
paper

104. Defendant's NON-existing law library
and bogus grievance procedure prevent
detainees from challenging their condition
of confinement or assisting in their
criminal defense.

COUNT I
42 U.S.C 1983

105. Plaintiff reiterates paragraph 1-104

(21)

as if fully stated herein

106. The plaintiff and all current and future detainees housed at SLCT, men and women, will suffer and are suffering serious health risk from the twenty-four a day constant illumination by the named defendants which is causing sleep deprivation. The sleep loss is inflicting such devastating effects on the brain, linked to numerous neurological and psychiatric conditions (e.g Alzheimer's diease, anxiety, depression, bipolar disorder, suicide, stroke, and chronic pain). Too on every physiological system of the body, further contributing to countless disorders and diease (e.g cancer, diabetes, heart attacks, infertility, weight gain, obesity, and immune deficiency).

No facet of the human body is spared the crippling, noxious harm of sleep loss: socially, organizationally, economically, physically, behaviorally, nutritionally, linguistically, cognitively, and emo-

( 22 )

tionally dependent upon sleep. Some of the violence at SLCJ is the fault of the defendants sense insufficient sleep has been linked to aggression, bullying and violence in adult prison populations; and because sleep deprivation has been used as a tool of torture to extract information, it is without a doubt sleep deprivation on cruise control leads to many false confessions and plea deals to escape the torture of constant illumination at SLCJ, aiding the conviction rates at St. Louis county courts

107. There is no penological justification to expose plaintiff and those similarly situated to: Constant illumination, Covid 19, unsanitary conditions, sleeping on floors and poor nutrition among other nefarious behavior

(23)

108. Defendants actions violates both the 5th and 14th Amendment of the United States Constitution Due process and equal protection of the laws as more fully described in the above paragraphs.

COUNT II
Deliberate Indifference to
Safety and Health
COVID 19

109. Plaintiff reiterates paragraphs 1-108 as if fully stated herein

110. Defendant Allen was deliberately indifferent to plaintiff and other detainees health and well being when she willfully, knowingly and wantonly cleared other detainees and plaintiff for general population despite the protocal set out in writing by the jail to test all detainees before intergrating them into general population.

111. Defendant Anders too was deliberately indifferent for he was ultimately charged with the duties of assigning a staff member

(24)

to handle detainee housing before, during
and after the Covid pandemic at SLCJ.

112. Defendant Major McKnight and Sgt.
Thompson who were incharge of cell
assignment knew or should have known
plaintiff was being housed in a cell with
a detainee who cellmate had tested positive
for Covid 19 just the day before he moved
in.

113. In or about January 15, 2022 on
information and belief roughly 110 detainees
many of them still in general population
tested positive for Covid and freely allowed
to roam in general population with the
foreseeable result plaintiff and others could
be exposed to the highly contagious Covid 19.

114 Defendant Allen was deliberate indifferent
when she knew or should have known detainees
who tested positive for Covid 19, but, neverthe-
less remained in population without recommend-
ing infective detainees be taking to ~~the 4th~~
fourth floor or be quaratined in their re-
spected housing cells with the forseeable

(25)

result of Widespread infections among detainees
as well as staff.

115. All of the defendants were reckless in
their formulation and execution of police res
and practices to protect detainees from
Covid 19, from testing, mask enforcement
to quarantining infected detainees.


COUNT III
Deliberate Indifference

116
116. Plaintiff reiterates paragraph 1-115 as
if fully stated herein.

117. Defendants are housing, men and wo-
men on floors, which create dangerous circum-
stances such as tripping and firehazzards
among other problems

118 Plaintiff was being housed on the floor
on 7D cell #11 when his cellmate attempt-
ed exit the cell for recreation and tripped
and fell on plaintiff-

(26)

119. The cells which detainees are sleeping on the floor in the so-called boats are designed for one person

120. The so-called boat blocks either the door or toilet or both

121. This cell overcrowding leads to arguments and fights. Plaintiff repeatedly argued with his cellmate before moving to a single cell.

122. With the constant illumination, cramp space, defendants know this arrangement is dangerous, for detainees and staff who have to break up fights or stop arguments.

/          COUNT IV
        UNSANITARY LIVING CONDITIONS

123. Plaintiff reiterates paragraph 1-122 as if fully stated herein.

124. The cell plaintiff and cellmate moved into sinks and toilets were filthy, a thirsty dog would not drink out of that toilet

(27)

and the Sink, the only thing
missing was the sign that said
Colored only. Ng only

125. The trash can was filled to
Capacity, the floor was just nasty,
wrappers, hair, toenails and smelled
of urine

126 Plaintiff was housed under
those condition for two week
with no out of cell exercise.

127. The bunk and mattress
equally was nasty

128. Cleaning supplies were never
brought around

## COUNT VI
### GRIEVANCE / ACCESS TO COURTS

129. Plaintiff reiterates paragraphs
1-129 as if fully stated herein

(28)

130. Defendants McKnight and Kramer used their authority as grievance liasons to deem the grievance process of No use to prisoners through their mischief as described in the above paragraphs.

## COUNT VI
## PREDETERMINED DISICIPLINARY REPORT

131. Plaintiff reiterates paragraphs 1-130 as if fully stated herein.

132. Defendants Page and Anders have in place a disciplinary process that is ripe for abuse by allowing Correctional staff members to write a report, hear it themselves, punish before the report is even served on the prisoner, and deem the process Ungrievable

133. Defendants disciplinary process

(29)

Violates established due process procedure.

134 This judge, jury and executionor style hearing is regularly used by staff for setting personal issues against prisoners

135          COUNT VII
    8th and 14th AMEND
        VIOLATIONS

135. Plaintiff reiterates paragraphs 1-134 as if fully stated herein.

136 Defendants know the conditions of confinement outlined in this complaint violates the 8th and 14th Amendment and their defense is untenable and a waste of taxpayers dollars.

        COUNT VIII
    CUSTOM and POLICY

137          ( 30 )

137. Plaintiff reiterates paragraph 1-136 as if fully stated herein

138. Defendants have multiple custom and policies in place and in use to destroy prisoner's health in violation of the 8th and 14th Amendments such as constant illumination, Covid-19 exposure, sleeping on floors, poor diets and other abuses yet to be discovered that are harming prisoners.

WHEREFORE, plaintiff and those similar situated pray this Honorable Court award them compensatory damages in excess of 22.5 million dollars and because their action shock the conscience and served no penological interest punitive damages in excess of 22.5 million dollars should be award to deter their actions by future officials

Calvin Burke              March 21, 2022
Calvin Burke

(31)