## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CALVIN BURKE,[1]                       )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          Case No. 4:22-CV-351 SEP
                                       )
ST. LOUIS COUNTY JAIL, et al.,         )
                                       )
          Defendants.                  )

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Calvin Burke's Motion to Proceed *in forma pauperis*, Doc. [2], Motion to Appoint Counsel, Doc. [4], Motion to Certify Class, Doc. [5], Motion for Temporary Restraining Order, Doc. [6], and Ex Parte Motion for Restraining Order, Doc. [7]. For the reasons set forth below, Plaintiff's Motion for Leave to Proceed *in forma pauperis* is granted, and the Court will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the pleading under 28 U.S.C. § 1915(e)(2), the Court finds that Plaintiff's Complaint fails to state a claim for relief, but Plaintiff will be permitted to amend his Complaint with respect to his claim of deliberate indifference to his dental needs. Plaintiff's other motions are denied.

### MOTION TO PROCEED *IN FORMA PAUPERIS*

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. *Id.* After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward

---

[1] Plaintiff states that he is bringing his complaint on behalf of himself and others similarly situated. A prisoner cannot bring claims on behalf of other prisoners. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Plaintiff can plead and conduct only his own case. *See* 28 U.S.C. § 1654. Therefore, Plaintiff's request to bring a class action is denied.

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff has not submitted a *certified* prison account statement.  As a result, the Court will require Plaintiff to pay an initial partial filing fee of $1.00.  *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner does not provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances").  If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his *certified* prison account statement in support of his claim.

## INITIAL REVIEW OF PLAINTIFF'S COMPLAINT

## I.    Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pled facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  A "liberal construction" means that "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is "more than the mere possibility of misconduct[.]"  *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678. "[D]etermining whether a complaint states a plausible claim for relief is context-specific, requiring the reviewing court to draw on its experience and common sense."  *Id.* at 679.

2

## II.   Plaintiff's Complaint

Plaintiff is an inmate currently incarcerated at Eastern Reception Diagnostic and Correctional Center (ERDCC).  He brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights during his incarceration at St. Louis County Justice Center.  Plaintiff names the following as Defendants in this action:  St. Louis County Jail; Sam Page (St. Louis County Board President); Scott Anders (Director, St. Louis County Justice Center); Sergeant Thompson; Major Kramer; Major McKnight; Medical Director Allen; Food Supervisor Konnly; "Unknown Food Supervisor," and "Unknown Nurses."  Plaintiff brings this action against Defendants in their official and individual capacities and seeks damages and injunctive relief.

### A.  "Constant Illumination" Claims

 Plaintiff states that he was booked into the St. Louis County Justice Center on January 2, 2022.  Doc. [1] ¶ 11.  He claims he was exposed to "constant illumination" after he was booked into the Justice Center.  *Id.* ¶ 12.  Plaintiff does not state where the "constant illumination" at the Justice Center came from (i.e., whether it came from a light on in his cell, in the hallway, or elsewhere).  He also does not indicate whether the "illumination" occurred in every cell at the Justice Center, or if it only occurred in disciplinary or administrative segregation.  Plaintiff acknowledges that "constant illumination" may serve legitimate "safety and security" interests at the Justice Center but alleges that such concerns are mitigated by the presence of emergency call buttons in the cells.  *Id.* ¶¶ 18-20.

Plaintiff asserts that because of the illumination he averaged approximately 2½ hours of sleep per night during his incarceration at the Justice Center.  *Id.* ¶ 14.  He states that he tried several remedies to assist in getting more sleep at the Justice Center between January and the end of March 2022, including wrapping a towel over his eyes, meditation, exercise, and sleeping under his bed.  *Id.* ¶ 15.  Plaintiff alleges that his lack of sleep resulted in a loss of energy to exercise, memory loss, anxiety, overeating, anger episodes, impulsiveness, and other mood changes.  *Id.* ¶¶ 22, 27-29.  Plaintiff does not indicate whether he sought medical or mental health services for his symptoms.

Plaintiff also does not indicate whether all cells at the Justice Center were subject to the illumination or only his.  Nor does he state whether he asked for the lights to be extinguished in his cell, and if he asked, whom he asked.  Plaintiff also does not indicate whether the "constant illumination" occurred throughout the entirety of his three months at the Justice Center or if it

occurred during a specific period.  Finally, Plaintiff does not specify which Defendant placed him in or near a cell and subjected him to the "constant illumination."

### B.  Claims Relating to Covid-19 Testing Policy for New Inmates

Plaintiff alleges that the Covid-19 testing policy at the Justice Center was "wholly inadequate." *Id.* ¶ 49.  He asserts that when he and other detainees arrived at the Justice Center, they were placed in the general population without being tested for Covid-19.  *Id.* ¶ 50.  He also contends that, upon his arrival, one of his initial cellmates was "removed with possible Covid-19." *Id.* ¶ 52.  Despite this, neither Plaintiff nor the other detainee was tested for Covid-19.  *Id.* ¶¶ 53, 54.  Plaintiff does not allege, however, that he suffered from Covid-19 while being detained at the Justice Center.

### C.  Dental Claims

Plaintiff asserts that, in January 2022, he "developed a dental infection," which was treated with antibiotics and Tylenol.  *Id.* ¶ 56.  He does not name the person from whom he sought treatment at the Justice Center.  Plaintiff alleges that after he took all the antibiotics, his dental infection returned.  *Id.* ¶ 57.  He claims that he was "left in excruciating pain for weeks." *Id.* ¶ 58.  Plaintiff does not indicate in his Complaint whether he sought treatment for the dental infection, however, and if so, from whom, or if he was denied treatment.  He does state that he was "prescribed Tylenol and a mouth wash for about a week despite gum swelling/visible infection." *Id.* ¶ 59.  Plaintiff does not state who prescribed him the treatment or how long it went on.  He asserts that the mouthwash relieved pain temporarily, but he had to reuse the same mouthwash twice per day.[2]  *Id.* ¶¶ 61, 63.

Plaintiff states that he was then again provided antibiotics, "which halted the infection." *Id.* ¶ 65.  Again, Plaintiff neglects to allege who gave him the antibiotics, whether he had to seek treatment to receive them, or how long his infection had gone on at that point.  At some point, the infection returned, and Plaintiff claims he went through the mouthwash process again.  *Id.* ¶ 66.  Plaintiff does not state how long he had the alleged dental infection, whom he asked for treatment, if he was provided treatment promptly or treatment was inappropriately delayed, or if the infection stopped and then came back.  Rather, he states that "healthcare has now run out of

---

[2] Plaintiff claims that "[i]n the morning [he] would spit the mouthwash into a cup and reuse it to relieve the pain until the next time at night."  Doc. [1] ¶ 63.

mouthwash and left [him] in pain." *Id.* ¶ 67.  When Plaintiff filed the Complaint on March 24, 2022, he asserts that he was scheduled to see the dentist within five to seven months.  *Id.*

### D.  Nutrition Claims

Plaintiff claims that "[s]ince [his] incarceration at [the Justice Center], he has been on a kosher diet." *Id.* ¶ 68.  He states that, despite this, Defendant Food Supervisor Konnly and Defendant "Unknown Food Supervisor" served him food products with pork in them.  *Id.* ¶¶ 69, 70.  Plaintiff does not describe a particular occasion in which he was served pork, nor does he describe the food product he believes contained pork.  Plaintiff claims that Defendants "violated [his] religious rights by serving him pork products despite kosher diet for religious purposes." *Id.* ¶ 71.  Plaintiff does not indicate what religion he observes, however.

### E.  Conditions of Confinement Claims

Plaintiff alleges that when he arrived at the Justice Center, he was assigned a cell on the eighth floor, which was allegedly "used to quarantine newly arrived detainees for Covid-19 screening."[3] *Id.* ¶ 75.  He claims that his cell "had trash strewn across the floor . . . , sink, toilet and bunk"; that the cell "was covered in filth"; and that "[t]he Jail has a custom and policy of housing newly arrived detainees in these filthy conditions[.]"  *Id.* ¶¶ 75, 76.

### F.  Claims Relating to Overcrowding

Plaintiff alleges that Defendants Page and Anders "have created health and safety violations which rise to the level of deliberate indifference by and through overcrowded conditions."  *Id.* ¶ 78.  Specifically, he contends that Defendants Page and Anders "have a custom of turning a single cell into a [double-occupant] cell" by using a "boat" in the cell to house a second prisoner.  *Id.* ¶ 79.  He asserts that the "boat" can obstruct the walkway in the cell or cause a tripping or falling hazard.  *Id.* ¶¶ 80, 81.  He also claims that the policy can cause increased violence among cellmates because of the "cramp[ed] conditions of the cell."  *Id.* ¶ 84.  Plaintiff does not allege that he had to share a single cell, however; thus, he appears to be raising the claim on behalf of others.[4]

---

[3] This allegation is contrary to Plaintiff's previous assertion that he and other detainees were placed in the general population at the Justice Center upon their arrival.  Doc. [1] ¶ 50.

[4] In his Memorandum filed in Support of his Temporary Restraining Order, Plaintiff does state, "Defendants have Plaintiff and others similarly situated sleeping on the cell floor which blocks the door and toilets in a so-called boat," suggesting that he may, at some point, have slept in a boat on the floor. Doc. [8] at 9.

### G.  Disciplinary Claims/Grievance Issues

Plaintiff alleges that on February 7, 2022, he received a disciplinary report from Sergeant Thompson.  *Id.* ¶ 85.  He does not indicate what conduct the report involved, but he asserts that he "never received a hearing" related to it.  *Id.* ¶ 86.  He claims he was also not allowed to "dispute" or "appeal" the findings of the report.  *Id.* ¶ 87.  Plaintiff does not indicate whether he was allowed to file an Informal Resolution Request (IRR) or grievance in relation to the disciplinary report.

According to Plaintiff, "Defendant Thompson wrote the report, heard the report and decided the punishment with one stroke of the pen," but Defendants Page and Anders are responsible for the "custom and policy of disciplinary process" without hearing.  *Id.* ¶¶ 88, 89. He does not indicate how Defendants Page and Anders were involved in creating the alleged policy.

Plaintiff asserts that the Justice Center's "grievance process is under the misguidance of two of the most seasoned civil rights violators ever assembled on one floor," Major Kramer and Major McKnight.  *Id.* ¶ 90.  He claims that they "violate jail policy" by failing to timely respond to grievances.  *Id.* ¶ 91.  He asserts that Defendants "love to claim either the grievance is still being investigated, misplaced, or simply fail to return [the grievance]."  *Id.* ¶ 92.

Plaintiff states that he filed two grievances related to his medical issues with Defendants McKnight and Kramer, who then shared them with Defendant Medical Director Allen.  *Id.* ¶ 94. In those grievances, Plaintiff claimed that an unknown nurse at the Justice Center had kicked Plaintiff's medication under his cell door, which caused it to spill on the floor.  *Id.* ¶ 97.  Plaintiff asserts that only one grievance was returned to him, and when he asked Defendant Kramer where the other grievance was, Kramer told Plaintiff that he had already returned it to him.  *Id.* ¶ 98. When Plaintiff informed Kramer that the grievance had not been returned, Kramer told him that he must have lost it.  *Id.*  Plaintiff filed an additional grievance related to Kramer's alleged failure to return the grievance, which was returned to him by "Kramer himself."  *Id.* ¶ 99.  Again, Plaintiff alleges that Defendants Page and Anders are responsible for the faulty grievance procedures, but he does not indicate how they were involved.  *Id.* ¶ 100.

### H.  Plaintiff's Access to Courts Claims

Plaintiff further asserts that Defendants Page and Anders have "den[ied] prisoners access to the courts by failing to update[]" the prison's law library and textbooks, and by not providing access to individuals "trained in the law . . . and in detainee filings."  *Id.* ¶ 101.  Specifically,

Plaintiff states that Defendants often refuse to mail detainees' legal documents to state and federal courts, or to supply postage or envelopes, or typing paper for the typewriter. *Id.* ¶¶ 102, 103. Plaintiff does not allege that he himself has been denied meaningful access to the courts; nor does he describe an occasion on which he asked either Page or Anders for postage stamps, envelopes, or paper and was denied those items. Plaintiff also fails to indicate how he was denied access to legal documents or research tools.

## III.   Discussion

After careful review of Plaintiff's Complaint, the Court finds that, even on a liberal construction, it fails to state a claim for relief.

### A.  Plaintiff's Allegations Against Unknown Nurses and Unknown Food Supervisor

Plaintiff's claims against the Unknown Nurses and Unknown Food Supervisor are subject to dismissal for failure to state a claim. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *see also Krych v. Hvass*, 83 F. App'x. 854, 855 (8th Cir. 2003) (affirming dismissal of self-represented plaintiff's complaint against defendants who were merely listed in the complaint without allegations of constitutional harm against them); *Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (no respondeat superior liability in § 1983 suits).

Plaintiff lists Unknown Nurses and Unknown Food Supervisor in the case caption and asserts claims against them, but he sets forth no facts indicating that they were directly involved in or personally responsible for any alleged violations of his constitutional rights. Therefore, Plaintiff fails to state a claim against those Defendants, and they are dismissed. 28 U.S.C. § 1915(e)(2)(B).

### B.  Plaintiff's Official Capacity Claims

Plaintiff's official capacity claims against the named Defendants in this action are also subject to dismissal. A suit brought against an official in his or her official capacity pursuant to § 1983 "is not a suit against the official but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *see Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In other words, the real party in interest in an official capacity suit is not the named official, but the

governmental entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").

Plaintiff alleges that Defendants are all employed by the St. Louis Justice Center; thus, official capacity claims against them are de facto claims against the Justice Center.  But a jail is not an entity that may be properly sued under § 1983.  *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("county jails are not legal entities amenable to suit"); *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) ("departments or subdivisions" of local government are not "juridical entities suable as such"); *De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail as a party because it was not a suable entity).  Thus, Plaintiff's allegations against Defendants in their official capacities must be dismissed.

Unlike the Justice Center, St. Louis County—the local government—can be sued under § 1983.  *Monell v. Dep't of Soc. Servs of City of N.Y.*, 436 U.S. 658, 690 (1978).  But even if the Court were to substitute St. Louis County as the proper party defendant for Plaintiff's official capacity claims, he would still fail to state a claim.  Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018).  Plaintiff fails to make a claim on any of those grounds.

"Policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *see also Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) (quoting *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669, 674 (8th Cir. 2004)) ("A 'policy' is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question.").  For a policy that is unconstitutional on its face, a plaintiff does not need to adduce other evidence beyond "a statement of the municipal policy and its exercise."  *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (citing *City of Ok. City v. Tuttle*, 471 U.S. 808, 822-23 (1985)).  However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish

the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

> To establish liability based on "custom," a plaintiff must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That [he] was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quoting *Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991)).  And to establish deliberate indifference for purposes of failure to train claim, a plaintiff must show "[a] pattern of similar constitutional violations by untrained employees[.]"  *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's Complaint is composed primarily of conclusory allegations that he was deprived of constitutional rights by Defendants Page and Anders because of their creation of unconstitutional policies or customs at the Justice Center.  Specifically, Plaintiff asserts that:  (1) the Justice Center has "a custom and policy of housing newly arrived detainees in . . . filthy conditions";  (2) the Justice Center has a "custom" of turning a single cell into a double-occupant cell by using a "boat" in the cell to house a second prisoner; and (3) the Justice Center has a "custom and policy" of an unlawful disciplinary process "of denying redress of grievances." Doc. [1] ¶¶ 77, 79, 100.

Although Plaintiff uses the terms "policy" and "custom," he nonetheless fails to state a claim for municipal liability under *Monell*, because his factual allegations are limited to his own experiences.  He provides no facts suggesting either a "widespread . . . pattern of unconstitutional misconduct," *Johnson*, 725 F.3d at 828, or that the alleged misconduct in his case was the "product of deliberate or conscious choice by the policymakers," *Szabla*, 486 F.3d at 389.  Nor does he allege a pattern of similar misconduct by untrained employees.  *S.M.*, 874 F.3d at 585.  The Court cannot impute § 1983 liability to the County based solely on the fact that the individual Defendants are employed at the Justice Center.  *See A.H. v. St. Louis City, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . . cannot be liable on a respondeat superior theory . . . .").  Rather, to state a § 1983 claim against St. Louis

County, Plaintiff must allege that the County was a "moving force" behind the alleged
deprivations of his constitutional rights.  *See Graham*, 473 U.S. at 166 (citing *Polk Cnty. v.
Dodson*, 454 U.S. 312 (1981)) ("a governmental entity is liable under § 1983 only when the
entity itself is a 'moving force' behind the deprivation").  Plaintiff makes no such allegations;
therefore, even on a liberal construction, the Court cannot find that the Complaint states a viable
claim for municipal liability.

Because Plaintiff fails to state a claim for municipal liability against St. Louis County, his
claims against Defendants in their official capacities must be dismissed.  *See Elder-Keep*, 460
F.3d at 986 (citing *Graham*, 473 U.S. at 165).

### C.  Plaintiff's Individual Capacity Claims

#### 1.  *Access to Courts*

To state a claim premised on denial of access to the courts, a plaintiff must demonstrate
that he suffered an "actual injury," such as the frustration or rejection of a nonfrivolous legal
claim.  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  The Eighth Circuit has recognized that,
when bringing an access to courts claim, it is insufficient to allege a denial of access to a specific
resource, "even if the denial is systemic."  *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per
curiam) (citing *Lewis,* 518 U.S. 343).  "Instead, the plaintiff must show the lack of [that
resource] hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal,
postconviction matter, or civil rights action seeking to vindicate basic constitutional rights."  *Id*.
(citing *Lewis*, 518 U.S. at 354).  Speculation that injuries might occur, or might have occurred, is
insufficient.  *See Hartsfield v. Nichols,* 511 F.3d 826, 833 (8th Cir. 2008).  "Absent an
articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to
filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are
merely speculative."  *Id*.

Here, Plaintiff does not explain, and it is not otherwise apparent, how any of Defendants'
alleged conduct, alone or in concert, hindered his pursuit of a legal claim in this or any other
action.  As such, his access to courts claim must be dismissed.

#### 2.  *Disciplinary Claims/Grievance Issues*

Plaintiff makes two claims related to grievance procedures at the St. Louis County Justice
Center.  First, he asserts that grievances were handled improperly and often not responded to.
Doc. [1] ¶¶ 90, 92-100.  And second, Plaintiff claims that Sergeant Thompson "wrote [him] a

disciplinary report," but never provided him a hearing on that report.[5]  *Id.* ¶¶ 85, 86.  Plaintiff also notes that he was not given the opportunity to dispute or appeal the findings of the report and that Thompson "decided the punishment with one stroke of the pen[.]"  *Id.* ¶¶ 87, 88.

Plaintiff's claims related to the Justice Center's grievance procedures and Sergeant Thompson's disciplinary report fail to allege a constitutional violation.  First, "a prison grievance procedure is a procedural right only" and "does not confer any substantive right upon the inmates."  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (cleaned up) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).  Plaintiff "does not have an independent constitutional right to a grievance procedure," and therefore his claims that Defendants either didn't process his grievances or failed to timely to do so and that Defendant Kramer reviewed grievances about himself do not state a claim under § 1983.  *May v. Woolfolk*, 2016 WL 7230425, at *2 (E.D. Mo. Dec. 14, 2016) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)); *see also Fallon v. Coulson*, 1993 WL 349355, at *1 (8th Cir. 1993) (the defendants' failure "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (the defendants' failure to comply with the time limits provided by their grievance procedures did not state an actionable claim under § 1983); *Buckley*, 997 F.2d at 495 (inmates have no liberty interest in the processing of grievance forms).

As to Plaintiff's second allegation, Plaintiff contends that Sergeant Thompson violated his Fourteenth Amendment Due Process rights by failing to provide a hearing with respect to the disciplinary report before punishing him for the alleged misconduct.  To state a claim for a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must first demonstrate that he was deprived of life, liberty, or property by government action.  *Phillips*, 320 F.3d at 846; *see also Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (to be successful on a due process violation claim, a plaintiff must have been deprived of life, liberty, or property; otherwise "it does not matter whether one has received due process or not").  As life or property is not at issue in this case, Plaintiff must identify a liberty interest of which he has been deprived in order to sustain a due process claim.  *See Phillips*, 320 F.3d at 847.

Plaintiff does not state what punishment he received from Sergeant Thompson after he was allegedly found guilty of the conduct violation, which makes it impossible to assess whether

---

[5] Plaintiff does not indicate what alleged misconduct Sergeant Thompson's report addressed.

he was deprived of a liberty interest in violation of his constitutional right to due process.  Even assuming Plaintiff received a punishment as significant as being placed in administrative segregation, however, that allegation would not necessarily suffice to state a claim for a violation of due process.  The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  And the Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship.  *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy*, 100 F.3d at 642 (plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (a plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement 'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest'").  Moreover, that is true even if the "demotion to segregation [is] . . . without cause[.]"  *Phillips*, 320 F.3d at 847 (citing *Kennedy*, 100 F.3d at 642).

In order to make a claim that the deprivation of a hearing was a due process violation, therefore, Plaintiff would have to allege that the punishment he received as a result of the flawed disciplinary process was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Because he makes no such claim, he fails to state a due process claim.

### 3.  *Conditions of Confinement*

Plaintiff asserts that several conditions of his confinement at the Justice Center violated his constitutional rights under the Fourteenth Amendment Due Process Clause.  Specifically, he contends that his rights were violated:  (1) because some of the inmates at the Justice Center had to sleep in "boats" on the floors of a single-person cell, although it is not clear from the Complaint whether Plaintiff slept in such a boat; (2) because of the "constant illumination" in or near his cell; and (3) because the holding cells that housed inmates when they arrived at the Justice Center were "filthy."  Doc. [1] ¶¶ 105-108, 116-128.

In evaluating a pretrial detainee's constitutionality of conditions claims, "the proper inquiry is whether those conditions amount to punishment of the detainee," as "under the Due

12

Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Accordingly, the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37.  While the Constitution prohibits the punishment of pretrial detainees, "[t]he Constitution does not mandate comfortable prisons[.]" *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994).

A detainee may demonstrate that his conditions rise to the level of punishment in two ways.  *Stearns v. Inmate Serv. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).  "[The] plaintiff could show that the conditions were intentionally punitive," or "the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose of were excessive in relation to that purpose." *Id.* (citing *Bell*, 441 U.S. at 538-39).  With respect to the second method, "[i]f conditions are found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees[.]'" *Id.* (citing *Bell*, 441 U.S. at 539).  In determining whether the conditions of a detainee's detention are unconstitutionally punitive, the Eighth Circuit has applied a deliberate indifference standard.  *Owens*, 328 F.3d at 1027; *see also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee . . . must show the defendant official was deliberately indifferent to his rights.").  In particular, the Eighth Circuit has explained that the deliberate indifference standard is applicable when "the governmental duty to protect at issue . . . is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  Therefore, "deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id.* at 345.

As to Plaintiff's first claim related to overcrowding at the Justice Center, the Eighth Circuit has held that a similar practice (i.e., "double-celling") could constitute punishment "only if it [leads] to deprivations of essential food, medical care, or sanitation or if it increased violence among inmates or created other conditions intolerable for prison confinement." *Cody v. Hillard*, 830 F.2d 912, 914 (cleaned up) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).  Viewing the facts in the light most favorable to Plaintiff, he has not sufficiently alleged that the

making of a single cell into a double-occupancy cell by use of a "boat" rises to the level of a violation of his constitutional rights.  Although Plaintiff contends that the "boat" can obstruct the walkway of the cell and thereby become a tripping or falling hazard, he does not allege, for example, that such an obstruction affected the sanitation of the cell or that it constitutes a "condition[] intolerable for prison confinement."  *Id.*  The same is true for Plaintiff's allegation that the double-celling policy could cause violence among cellmates because of the "cramp[ed] conditions."  Doc. [1] ¶ 84.  Plaintiff's allegation that cramped conditions *could* cause violence is not sufficient.  In order to state a claim, he would have to allege that the conditions actually did cause an increase in violence among inmates or otherwise rendered his conditions intolerable.  Therefore, Plaintiff's allegations related to double-celling and the use of "boats" at the Justice Center must be dismissed.

Similarly, Plaintiff fails to allege that the "constant illumination" in his cell violates his due process rights.  Although sleep deprivation may constitute punishment under the Eighth Amendment, the Eighth Circuit has held that constant lighting can serve a legitimate penological purpose.  *See, e.g.*, *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996) (constant lighting reasonably related to a prison's safety concerns considering the totality of the circumstances); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (affirming the district court's finding that "continuous lighting in [a] holding cell was not unreasonable given the need for jail security and the need to monitor [the prisoner]"); *see also Fillmore v. Ordonez*, 829 F. Supp. 1544, 1568 (D. Kan. 1993) (continuous low-intensity light was "reasonably related to the maintenance of internal security of the [jail]"), *aff'd*, 17 F.3d 1436 (10th Cir. 1994), *abrogated in part on other grounds as recognized by Williams v. Weber*, 905 F. Supp. 1502, 1512 n.13 (D. Kan. 1995).

Plaintiff does not allege that the Justice Center's constant use of the lights was intentionally punitive.  *See Stearns*, 957 F.3d at 907 (citing *Bell*, 441 U.S. at 538-39).  Although Plaintiff contends that the Justice Center's safety and security concerns could be mitigated by the use of the emergency buttons placed in each cell, he does not allege that the lighting served no legitimate governmental purpose, nor that the actions were arbitrary or excessive in light of the circumstances.  *See id.*  Even if Plaintiff had made such allegations, his claim would fail because he does not indicate a specific Defendant who purportedly committed the violations.  *Madewell*, 909 F.2d at 1208 ("Liability under § 1983 requires a causal link to, and direct responsibility for,

14

the deprivation of rights.").  Therefore, his claims related to the "constant illumination" in his cell must be dismissed.

Finally, Plaintiff also fails to state a claim that the "filthy" conditions of the quarantine cells at the Justice Center violated his Fourteenth Amendment due process rights.  Plaintiff does not specify how the cell was "filthy" other than that there was trash in it and that it was "nasty." Neither the fact that there was trash in the cell nor Plaintiff's impression that the cell was "nasty" amounts to a violation of Plaintiff's rights.  The Eighth Circuit has found no due process violations in conditions alleged to be much more severe than those alleged here.  *See White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (no constitutional violation where prisoner confined to allegedly unsanitary cell for 11 days); *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (no constitutional violation where pretrial detainee was subjected to raw sewage in his cell for four days); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994) (no constitutional violation where inmate placed in unclean cell containing dried feces, vomit, hair, garbage, rotting food, and dried human mucus and not offered limited cleaning supplies until three to four hours later)*.  Moreover, Plaintiff's confinement in the quarantine cell was limited, which weighs against finding that a constitutional violation occurred.  *See Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)) ("Conditions, such as a filthy cell, may 'be tolerable for a few days and intolerably cruel for weeks or months.'"). Accordingly, Plaintiff's factual allegations are not sufficient to state a claim for relief with respect to the conditions of his quarantine cell.

Plaintiff's claims related to the condition of his confinement must all be dismissed for failure to state a claim.

### 4. Covid-19 Testing Policy for New Inmates

Plaintiff also alleges that the Covid-19 testing policy at the Justice Center is "wholly inadequate," and therefore violates his rights under the Due Process Clause.  Doc. [1] ¶ 49. Specifically, he asserts that when he and other detainees got to the Justice Center, they were placed in the general population, despite not being tested for the virus.  *Id.* ¶ 50.  He also alleges, however, that when he arrived at the Justice Center, he was assigned to a cell on the eighth floor of the Justice Center, and that those "cells were used to quarantine newly arrived detainees for Covid-19 screening." *Id.* ¶ 75.

Like the other claims related to his cell conditions, this claim is analyzed under a deliberate indifference standard.  *See Engel v. CO1*, 2021 WL 1198061, at *3-4 (E.D. Mo. Mar.

30, 2021); *see also Butler*, 465 F.3d at 345 ("deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety").  The fact that a jail engages in screening inmates and separating Covid-positive patients from the general population "indicates that the [institution] is not being deliberately indifferent to the needs of the inmates that are not positive" for the virus.  *See Engel*, 2021 WL 1198061, at \*3-4; *Goldsmith v. Heffner*, 2022 WL 503723, at \*7 (E.D. Mo. Feb. 18, 2022); *see also Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (explaining that the quarantining of "any inmate exposed to Covid-19 is strong evidence that [the defendants] are responding reasonably to the risk posed by the virus").

Plaintiff admits that the Justice Center reserved certain cells for quarantining incoming detainees.  And Plaintiff does not allege that he was denied medical treatment or reasonable safety upon testing positive for or experiencing symptoms of Covid-19.  *See, e.g.*, *Garner v. Keen*, 2021 WL 1923507, \*5 (E.D. Mo. May 13, 2021) (dismissing complaint on initial review where inmate complained about quarantine measures but had not contracted the virus).  Therefore, Plaintiff fails to state a claim that the Justice Center's Covid-19 measures violated his due process rights.

### 5. *Nutrition Claims*

Plaintiff further contends that his "religious rights" were violated by Defendant Food Supervisor Konnly.  Specifically, he notes that "[s]ince [his] incarceration at [the Justice Center], he has been on a kosher diet," but Defendant Konnly served him food products containing pork.  Doc. [1] ¶¶ 68, 69.  Although Plaintiff contends that he practices a kosher diet for religious reasons, he does not state which religion he observes.  *Id.* ¶ 71.  Nor does he allege when he was served pork or which pork-containing products he believes he was served.

To the extent Plaintiff is attempting to bring a claim for a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1(a), that claim fails.  Plaintiff's allegations are against Defendant Konnly in his official capacity.  While RLUIPA permits official capacity claims against prison officials, it does not authorize monetary damages based on such claims.  *See Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009).  Any claim for injunctive relief under RLUIPA is moot because, since filing this Complaint, Plaintiff was transferred from the Justice Center to ERDCC.  Doc. [11]; *see Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (inmate's RLUIPA claim for injunctive relief was mooted by

16

transfer to another facility where he was no longer subject to the challenged policy).  Therefore, Plaintiff cannot maintain a claim under RLUIPA.

To the extent Plaintiff is attempting to bring a claim under the First Amendment for a violation of the Free Exercise Clause,[6] that claim also fails.  The First Amendment provides, in part, that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. Amend. I.  To assert a valid First Amendment claim, Plaintiff must allege (1) that his religious beliefs are sincerely held and (2) that his free exercise of those beliefs has been infringed upon by the defendant.  *See Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004) (citing *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996)).  Actual infringement occurs when a prison places a "substantial burden" on an inmate's ability to practice religion.  *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997).  And according to the Eighth Circuit:

> Substantially burdening one's free exercise of religion means that the regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (internal quotation marks omitted) (citing *Murphy*, 372 F.3d at 988).

Here, Plaintiff does not allege a sincerely held religious belief requiring adherence to a kosher diet.  Nor does he sufficiently allege that Defendant Konnly infringed any such belief.  Plaintiff simply states that Defendant Konnly served him food products with pork in them.  He makes no allegations that would enable the Court to evaluate the severity of the alleged infringement or determine whether it was a "substantial burden" on his ability to exercise his religion.  Accordingly, Plaintiff cannot maintain a claim pursuant to the Free Exercise Clause of the First Amendment, and his claims related to the non-kosher food he was allegedly served at the Justice Center are dismissed.

### 6.  *Dental Claim*

Finally, Plaintiff contends that Defendants failed to properly treat his dental infections while at the Justice Center.  Doc. [1] ¶¶ 56-67.  Because Plaintiff was a pretrial detainee at the

---

[6] A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims."  *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004).

Detention Center, his "right to medical care arises under the Due Process Clause of the Fourteenth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (citing *Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006)). Although Plaintiff's claim is rooted in the Fourteenth Amendment, a pretrial detainee is "entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Kitchen v. Miller*, 343 F. Supp. 2d 820, 823 (E.D. Mo. 2004) (quoting *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)). Therefore, the Court applies the deliberate indifference standard for an Eighth Amendment violation to Plaintiff's claim. *Id.*

"The Eighth Amendment's prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support such a claim. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008) (quoting *Pietrafeso v. Lawrence Cnty. S.D.*, 452 F.3d 987, 983 (8th Cir. 2006)). Instead, a plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). "A serious medical need is one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *Coleman*, 114 F.3d at 784). A prisoner may show deliberate indifference through an intentional delay in or denial of access to medical care. *Estelle*, 429 U.S. at 104-05.

Plaintiff alleges that he suffered from a dental infection during his three months at the Justice Center. Although he does not identify what type of dental infection he had, he alleges that he was given two rounds of antibiotics and two rounds of medicated mouthwash to treat it. Doc. [1] ¶¶ 59, 65. He also claims that he was given Tylenol for pain. *Id.* ¶¶ 57, 58. Plaintiff contends that the infection did not get better, however, and that he was not provided with adequate treatment thereafter. *Id.* ¶ 67. Specifically, he claims that the Justice Center "[ran] out of mouthwash and left [him] in pain," and that he was told he would have to wait five to seven months to see a dentist. *Id.* Plaintiff does not indicate in his Complaint which Defendant he believes failed to provide him with adequate care, nor does he state who treated him for the

infection.  *See Madewell*, 909 F.2d at 1208 ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

Plaintiff has not alleged which prison official he believes failed to provide him with adequate dental care.  Nor has he alleged that any prison official knew of his alleged serious medical need, such that the failure to respond to it could constitute deliberate indifference.  Therefore, Plaintiff's inadequate dental care claim fails to state a claim upon which relief can be granted.  Considering the particularity of the other allegations relating to his dental care, however, and the fact that Plaintiff is proceeding pro se, the Court will permit Plaintiff to replead his dental claim in an amended complaint.  *See Calon v. Bank of Am. Corp.*, 2015 WL 3948171, at *4 (W.D. Mo. 2015) (quoting *Fournier v. Bank of Am. Co.*, 2014 WL 421295, at *3 (N.D.N.Y. 2014)) (allowing a pro se plaintiff to replead one of his claims where he "could plausibly allege facts supporting a valid claim" against the defendant).

Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.").  Plaintiff must **type or neatly print** the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure.  *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner.  Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant.  *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).  Plaintiff is required to set out his inadequate dental care claim in a simple, concise, and direct manner, and state the facts supporting his claim as to each named defendant.  *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); Fed. R. Civ. P. 8(d)(1) (each claim shall be simple, concise, and direct); Fed. R. Civ. P. 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances).  Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue.  *See* Fed. R. Civ.

P. 10(a) ("The title of the complaint must name all the parties").  If there is not enough room in the caption, Plaintiff may add additional sheets of paper.  However, all the defendants must be clearly listed.  Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.  Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim.

In the "Statement of Claim" section, Plaintiff should begin by writing a defendant's name.  In separate, numbered paragraphs under that name, he should write the specific facts supporting his claim or claims against that defendant.  If Plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant.  Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.  *See* Fed. R. Civ. P. 20(a)(2).  Alternatively, Plaintiff may choose a single defendant, and set forth as many claims as he has against him or her.  *See* Fed. R. Civ. P. 18(a).  Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.  Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action[.]"  *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him.  *Madewell*, 909 F.2d at 1208 ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").  It is not enough for Plaintiff to refer to a group of defendants and make general allegations against them.  Instead, he must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do.  *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) ("The essential function of a complaint . . . is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

If Plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to him.

### REQUEST FOR INJUNCTIVE RELIEF

Plaintiff also filed two motions for a temporary restraining order.  Docs. [6], [7].  In the first, he requests that the Court "stop the ongoing constitutional violations," Doc. [6] at 2, and in the second, he states that "Defendants have in place multiple practices and policies that are literally destroying prisoners['] health such as:  constant illumination, poor nutrition and poor dental care among other matters," Doc. [7] at 1.  In his memorandum in support of the TRO motions, Plaintiff again details his allegations related to "constant illumination," the delay in providing him dental care, the deficient Covid-19 screening policies, and the overcrowding and "floor sleeping."  Doc. [8] at 3-19.

"A Court issues [injunctive relief] in a lawsuit to preserve the status quo and prevent irreparable harm until the Court has the opportunity to rule on the lawsuit's merits."  *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).  In determining whether to issue a temporary restraining order, the Court must consider four factors:  "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on [the nonmoving party]; (3) the probability that [the] movant will succeed on the merits; on the merits; and (4) the public interest."  *See Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981).  For the reasons discussed in this Memorandum and Order, Plaintiff's Complaint fails to state a cause of action against Defendants under § 1983.  Consequently, the Court cannot find a presently existing threat of irreparable harm to Plaintiff that would warrant the issuance of emergency injunctive relief.

Additionally, after he filed the Motion for Temporary Restraining Order, Plaintiff was transferred from the St. Louis County Justice Center to ERDCC.[7]  *See* Doc. [11].  Therefore, his request for injunctive relief is moot.  *See Pratt v. Corr. Corp. of Am.,* 267 F. App'x. 482, 483 (8th Cir. 2008) (Section 1983 claims for declaratory and injunctive relief were moot when inmate was transferred to another facility and was no longer subject to alleged unlawful conditions).

### MOTION FOR APPOINTMENT OF COUNSEL

Finally, Plaintiff has filed a Motion to Appoint Counsel.  Doc. [4].  "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case."  *Stevens v.*

---

[7] Plaintiff's Motion for Temporary Restraining Order and Ex Parte Motion for Temporary Restraining Order, Docs. [6], [7], were filed on March 24, 2022.  In a Notice dated April 6, 2022, Plaintiff informed the Court that he had been transferred to ERDCC.  Doc. [11] at 1.

*Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  The Court "may appoint counsel in [a civil case] if convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel[.]"  *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (quotation marks and citations omitted).  When determining whether to appoint counsel for an indigent litigant, a court considers several facts, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."  *Id.* (citing *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)).  After reviewing those factors, the Court finds that the appointment of counsel is not warranted at this time.  Plaintiff has demonstrated, at this point, that he can adequately investigate and present his claims to the Court.  Additionally, neither the factual nor the legal issues in this case appear to be complex.  Therefore, Plaintiff's Motion to Appoint Counsel is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Proceed *in forma pauperis*, Doc. [2], is **GRANTED.**  *See* 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that Plaintiff shall pay an initial filing fee of $1.00 within **twenty-one (21) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.  *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that this action is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Court will hold the dismissal of this action in abeyance for **twenty-one (21) days** pending Plaintiff's decision to file an amended complaint.

**IT IS FURTHER ORDERED** that, within **twenty-one (21) days** of the date of this Memorandum and Order, Plaintiff may amend his Complaint to properly plead his claim that Defendants were deliberately indifferent to his serious dental needs.

**IT IS FURTHER ORDERED** that the Clerk of Court shall provide Plaintiff a Prisoner Civil Rights Complaint Form.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel, Doc. [4], is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify Class, Doc. [5], is **DENIED** as Plaintiff, a pro se litigant, may bring claims only on behalf of himself.  *See* 28 U.S.C.  § 1654.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order, Doc. [6], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Ex Parte Motion for Temporary Restraining Order, Doc. [7], is **DENIED.**

**IT IS FINALLY ORDERED** that an appeal of this Memorandum and Order shall not be taken in good faith.

Dated this 27th day of May, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE